IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RONALD EUGENE COBBS, deceased,    )
by and through TRICOLIA A.         )
COBBS, Administratrix,             )
                                   )
            Plaintiff,             )
                                   )
        v.                         )      1:10CV806
                                   )
COUNTY OF GUILFORD, SHERIFF        )
B.J. BARNES, and PRISON            )
HEALTH SERVICES, INC.,             )
                                   )
            Defendants.            )

**MEMORANDUM OPINION, ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The instant matter comes before the undersigned United States Magistrate Judge for a recommended ruling on the Motion to Dismiss the Second Amended Complaint by County of Guilford and Sheriff B.J. Barnes (Docket Entry 19) and for disposition of Plaintiff's Motion to Compel (Docket Entry 30). For the reasons that follow, the Motion to Dismiss should be granted in part and denied in part and Plaintiff's Motion to Compel will be denied as unripe.

BACKGROUND

Plaintiff's Second Amended Complaint alleges that, in 2009, Plaintiff was incarcerated in the Guilford County Jail "over a period of several months." (Docket Entry 26, ¶ 2.)[1] The Second Amended Complaint identifies Sheriff B.J. Barnes as "Sheriff of Guilford County" at all times relevant to this action (id. ¶ 3) and

_____

[1] For the purposes of this Memorandum Opinion, the undersigned refers to the decedent, Cobbs, as "Plaintiff."

Prison Health Services, Inc. ("Prison Health Services") as "a company that purports to provide medical services for prisons and jail facilities throughout the United States" (id. ¶ 5) which, at the time in question, "was contracted to provide medical screening, evaluation, treatment and all other aspects of medical support for individuals incarcerated in the Guilford County Jail" (id. ¶ 6).

According to the Second Amended Complaint, during his incarceration, an altercation occurred between Plaintiff and a guard at the Guilford County Jail, and Plaintiff, unarmed, was tased. (See id. ¶¶ 18-19.) The Second Amended Complaint goes on to allege that Plaintiff was subsequently handcuffed with his hands behind his back and "restrained and then tasered in the back." (Id. ¶ 20.) Purportedly, Plaintiff "did not speak or evidence any voluntary movement" after the application of the second taser and "died as a result of an application of restraint that played a role in his death." (Id. ¶¶ 21-22.) The Second Amended Complaint, however, does not allege any direct involvement in the foregoing incident by Sheriff Barnes. (See Docket Entry 26.)

As a result of these events, Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendment against Guilford County, Sheriff Barnes, and Prison Health Services (id. ¶¶ 25-30) and seeks "any and all damages recoverable under the North Carolina Wrongful Death Act, §28-18A" (id. ¶ 23), as well as treble damages "pursuant to North Carolina General Statute §162-55" (id. ¶ 24). Sheriff Barnes and Guilford County have now filed a Motion to Dismiss Plaintiff's Second Amended Complaint (Docket

Entry 19) and Plaintiff has filed a Motion to Compel certain video and photographic evidence of the incident (Docket Entry 30).

MOTION TO DISMISS

A plaintiff fails to state a claim when the complaint does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>[2]

I. <u>Guilford County</u>

Plaintiff contends that his "constitutional rights were [] violated as a direct and proximate result of . . . Guilford County's policies and/or customs and procedures and/or lack of policies and/or customs and procedures" regarding the hiring,

---

[2] "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009).

retention, training and/or supervision of employees at the Guilford County Jail. (Docket Entry 26, ¶ 27.) In addition, Plaintiff seeks to assert a related wrongful death action against Guilford County under North Carolina law. (See id. ¶ 23.) "In determining whether a county is liable for its sheriff's acts, a court must examine how state law allocates power and responsibility in a specific area or on a particular issue of policy." State ex rel. Wellington v. Antonelli, No. 1:01CV01088, 2002 WL 31875504, at *3 (M.D.N.C. Dec. 20, 2002) (Osteen, Sr., J.) (unpublished) (citing McMillian v. Monroe Cnty., 520 U.S. 781, 786 (1997), Knight v. Vernon, 214 F.3d 544, 552 (4th Cir. 2000), and Dotson v. Chester, 937 F.2d 920, 924 (4th Cir. 1991)).

With respect to both responsibility over the jail generally and, in particular, matters related to sheriff's office personnel, North Carolina law allocates final policymaking authority to the sheriff. See N.C. Gen. Stat. § 162-22 ("The sheriff shall have the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof."); N.C. Gen. Stat. § 153A-103(1) ("Each sheriff . . . has the exclusive right to hire, discharge, and supervise the employees in his office."). As this Court (per Judge Osteen, Sr.) observed in an analogous case: "Because Guilford County did not have final policymaking authority . . ., it cannot be held liable for the conduct of Sheriff Barnes or [his deputies]. Accordingly, [Guilford] County's motion to dismiss Plaintiff's § 1983 claim against it based on the Fourth and Fourteenth Amendments [should] be granted." State ex rel. Wellington, 2002 WL

31875504, at *3; accord Wiley v. Buncombe Cnty., ___ F. Supp. 2d ___, ___, 2012 WL 683112, at *6 (W.D.N.C. 2012) ("Since Buncombe County by law has no control over the Sheriff's employees and/or control over the jail, Buncombe County cannot [] be liable for the actions of [the sheriff] or those of his detention officers for events that occur at the Buncombe County Detention Facility operated by the Sheriff of Buncombe County."). Plaintiff's related state law claim against Guilford County fails as a matter of law on this same basis. See, e.g., Bailey v. Polk Cnty., N.C., No. 1:10CV264, 2011 WL 4565469, at *5-6 (W.D.N.C. Mar. 27, 2011) (unpublished) (recommending dismissal of supplemental state tort claims against county based on lack of policymaking authority over sheriff), recommendation adopted, 2011 WL 4565449 (W.D.N.C. Sept. 29, 2011) (unpublished).

II. Sheriff Barnes

    A. Section 1983 Claims - Individual Capacity

Plaintiff's Second Amended Complaint does not specify whether it asserts Section 1983 claims against Sheriff Barnes in his official capacity, individual capacity, or both. (See Docket Entry 26.) Plaintiff's Response Brief states that the "Complaint is drafted broadly to include both individual and official capacity claims against Sheriff Barnes that are applicable under the facts." (Docket Entry 28 at 2.)

In regards to individual liability, Plaintiff's Second Amended Complaint does not allege any actions taken directly by Sheriff Barnes. (See Docket Entry 26.) Rather, it declares:

-5-

> Upon information and belief, [Plaintiff's] constitutional rights were further violated as a direct and proximate result of [Sheriff] Barnes['s] . . . policies and/or customs and procedures and/or lack of policies and/or customs and procedures in:
>
>> (a) Failing to properly hire, train, and/or supervise officers in the performance of duties;
>>
>> (b) Failing to properly hire, train, and/or supervise officers and/or deputies with regard to the proper usage of tasers in the detention of prisoners;
>>
>> (c) Failing to properly hire, train, and/or supervise officers and/or deputies with regard to the proper usage of force in the detention of prisoners;
>>
>> (d) Failing to properly hire, train, and/or supervise officers and/or deputies with regard to the proper usage of restraints in the detention of prisoners; and
>>
>> (e) Failing to have policies and/or implement policies regarding providing emergency assistance to individuals injured or rendered unconscious by taser.

(Id. ¶ 27.) Plaintiff acknowledges the lack of direct allegations against Sheriff Barnes in his Response Brief: "Plaintiff does not claim that Sheriff Barnes was personally involved in the incident in a physical sense, but was involved via his deputies, policies, and procedures for which he is statutorily responsible." (Docket Entry 28 at 2.)

Plaintiff's Section 1983 claim against Sheriff Barnes in his individual capacity thus must rest either on "deliberate indifference" supervisory liability or a "failure to train" theory because the doctrine of *respondeat superior* does not apply under 42 U.S.C. § 1983. See Iqbal, 566 U.S. at 676. As to the first of the

-6-

potential rationales, "[s]upervisory officials may be liable under § 1983 if '(1) . . . the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) . . . the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices []'; and (3) . . . there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 963 (M.D.N.C. 2011) (Beaty, C.J.) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)) (alterations provided by McFadyen).

Other recent authority has further fleshed out the foregoing requirements:

> To meet the first requirement, the plaintiff must proffer evidence that the misconduct has occurred on other occasions or is "widespread." [*Shaw*, 13 F.3d at 799.] Further, to establish that the supervisor's response is deliberately indifferent, the plaintiff must show the supervisor's "'continued inaction in the face of documented widespread abuses,'" which is a "heavy burden." *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984)). Finally, the plaintiff may show an affirmative causal link between the supervisor's response and the plaintiff's injury when the injury is a "natural consequence[ ]" of the supervisor's inaction. *Id.* at 800 (quoting *Slakan*, 737 [F.2d] at 376).

Goodwin v. Beasley, No. 1:09CV151, 2011 WL 238640, at *1 (M.D.N.C. Jan. 24, 2011) (Tilley, J.) (unpublished).

In light of this standard, Plaintiff's allegations are wholly inadequate to state a claim against Sheriff Barnes for failure to

-7-

properly supervise.  First, Plaintiff recounts a single incident as opposed to "widespread" misconduct.  (See Docket Entry 26.) Second, Plaintiff offers no factual assertions to support an inference of "continued inaction" on the part of Sheriff Barnes, especially in light of the absence of any factual allegations even consistent with "widespread abuses."  (Id.)  Finally, despite Plaintiff's contention that Sheriff Barnes's "policies on [taser] usage is [sic] a causal link to the harm suffered by Mr. Cobbs" (Docket Entry 28 at 3), the Second Amended Complaint contains no factual assertions regarding those policies (see Docket Entry 26). In sum, Plaintiff's Second Amended Complaint offers no factual matter to support a Section 1983 claim against Sheriff Barnes under any recognized theory of supervisory liability, but instead offers only general and conclusory allegations that fail to meet the standards set by Iqbal and Twombly.

To the extent Plaintiff's claim alleges a failure of Sheriff Barnes to train, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "[D]eliberate indifference in the context of failure-to-train arises when 'in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights.'" Goodwin, 2011 WL 238640, at

\*1 (quoting Canton, 489 U.S. at 390) (alterations provided by Goodwin).

Here, Plaintiff again offers only conclusory allegations, not factual matter, which, if taken as true, would state a claim to relief that is plausible on its face. In this regard, Plaintiff's Second Amended Complaint lacks any factual allegations showing: "(1) the nature of the training of the sheriff's officers . . . , (2) that any failure to train was a 'deliberate or conscious' choice . . ., or (3) that [the officer's] conduct was caused by a failure to train." Drewry v. Stevenson, Civil No. WDQ-09-2340, 2010 WL 93268, at \*4 (D. Md. Jan. 6, 2010) (unpublished) (alterations added). Moreover, Plaintiff's reliance on a single incident of alleged misconduct constitutes an inadequate basis to assert a such a claim. Id. ("[A] single incident of misconduct by a police officer is not sufficient to state a claim for inadequate training."). Accordingly, Plaintiff's Section 1983 claim against Sheriff Barnes in his individual capacity should be dismissed.

B. Section 1983 Claims - Official Capacity

Plaintiff's official capacity claims against Sheriff Barnes represent claims against the government entity associated with Sheriff Barnes. See Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006). "Some uncertainty exists as to the proper nomenclature for the local government entity associated with North Carolina sheriffs and their personnel and as to the capacity of any such entity to be sued." McNeil v. Guilford Cnty. Sheriff Dep't, No. 1:09CV999, 2010 WL 377000, at \*3 n.3 (M.D.N.C. Jan. 25, 2010)

-9-

Case 1:10-cv-00806-NCT-LPA Document 44 Filed 07/31/12 Page 9 of 16

(unpublished) (citing cases). Regardless of the identity of the entity in question, the standard remains the same: "Official liability will attach under § 1983 only if 'execution of a [] policy or custom . . . inflicts the injury.'" Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002) (Osteen, Sr., J.) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992)) (alterations added).

Here, Plaintiff's Second Amended Complaint does not assert a plausible claim to relief because it lacks adequate factual allegations regarding any "custom" or "policy." (See Docket Entry 26.) Plaintiff neither has identified a written policy nor offered factual assertions regarding "a widespread practice that is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'" McFadyen, 786 F. Supp. 2d at 954 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). Again, the Second Amended Complaint sets out factual matter only as to a single incident, coupled with conclusory allegations. Under these circumstances, Plaintiff's official capacity claim against Sheriff Barnes fails as a matter of law.

C.  State Law Claims

Plaintiff's Second Amended Complaint also asserts a state law claim for wrongful death against Sheriff Barnes. Under North Carolina law:

> [e]very person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . or other officer, may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties

-10-

Case 1:10-cv-00806-NCT-LPA   Document 44   Filed 07/31/12   Page 10 of 16

>     in office in the name of the State, without any
>     assignment thereof . . . .

N.C. Gen. Stat. § 58-76-5. "The statutory mandate that the sheriff furnish a bond works to remove the sheriff from the protective embrace of governmental immunity, but only where the surety is joined as a party to the action." Messick v. Catawba Cnty., N.C., 110 N.C. App. 707, 715, 431 S.E.2d 489, 494 (1993), disc. rev. denied, 334 N.C. 621, 435 S.E.2d 336 (1993). Here, Plaintiff has failed to join the surety as a party to this action. (See Docket Entry 26.) However, this failure is not fatal and can be corrected by an amendment to the pleadings. See Clark v. Burke Cnty., 117 N.C. App. 85, 89-90, 450 S.E.2d 747, 749 (1994).

With respect to the substance of Plaintiff's claim, Sheriff Barnes contends that he "is protected by public officer's immunity from state law negligence claims against him in his individual capacity." (Docket Entry 20 at 11.) North Carolina law affords public officers certain protection from claims under the doctrine of public official immunity, which declares that "a public officer who exercises his judgment and discretion within the scope of his official authority, without malice or corruption, is protected from liability." McCarn v. Beach, 128 N.C. App. 435, 437, 496 S.E.2d 402, 404 (1998) (citation omitted); see also Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984) ("A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.").

-11-

Because Plaintiff has alleged no direct action by Sheriff Barnes in the incident in question and, as discussed above, has asserted insufficient factual allegations against Sheriff Barnes to hold Sheriff Barnes liable for inadequate supervision or training, any claim against Sheriff Barnes for wrongful death lies only on principles of respondeat superior, which, unlike as to claims under Section 1983, can apply to state law torts. See W.E.T. v. Mitchell, No. 1:06CV487, 2007 WL 2712924, at *10, 13 (M.D.N.C. Sept. 14, 2007) (Beaty, C.J.) (unpublished) (finding, in motion to dismiss context, that state law tort claims against local government could proceed on theory of respondeat superior, while simultaneously ruling that case could not proceed against said entity under Section 1983).

Accepting the facts as pled in the Second Amended Complaint as true, as the Court must do at this stage of the proceedings, see Iqbal, 556 U.S. at 678, the Court should not dismiss Plaintiff's wrongful death action. Plaintiff alleges that, while unarmed and after being tasered once, he was "handcuffed behind his back, after which time he was restrained and then tasered in the back." (Docket Entry 26, ¶¶ 18-20.) At the motion to dismiss stage, said allegations sufficiently state a claim notwithstanding the public officer immunity doctrine under North Carolina law, in that tasering an unarmed, restrained individual could be deemed an action which an officer knew "to be contrary to his duty and . . . injurious to another," Grad, 312 N.C. at 313, 321 S.E.2d at 890. Because public official immunity does not apply as a matter of law,

-12-

the wrongful death claim may proceed against Sheriff Barnes under principles of respondeat superior.

LEAVE TO AMEND

In his Response Brief, Plaintiff contends:

> The instant action arises from a prisoner who died in [sic] while under the custody and care of Sheriff Barnes and his deputies. Virtually all information that will be needed to support allegations must necessarily come from the defendants as they survived to tell the tale of Mr. Cobbs [sic] demise. As such, information may be obtained during discovery in this matter that could allow a future amendment to the pleadings, which could support claims that may not currently be sufficiently supported by allegation. For this reason, Plaintiff asks that no claim be dismissed and that the alternative measure of allowing an amendment to the pleadings be ordered if so needed.

(Docket Entry 28 at 4-5.) Defendants, in reply, note that "Plaintiff has already been permitted to amend [the] Complaint twice in the short pendency of this lawsuit" (Docket Entry 31 at 6); that Plaintiff's request "does not comport with the Federal Rules of Civil Procedure" (id.); and that dismissing the claims is "justified" (id.).

Even treating Plaintiff's request regarding amendment as a properly filed motion under M.D.N.C. LR7.3(a),[3] Plaintiff fails to meet the applicable standard. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[t]he [C]ourt should freely give leave when justice so requires." The Court has some discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion . . . ."

---

[3] Local Rule 7.3(a) requires that "[e]ach motion shall be set out in a separate pleading."

-13-

Foman v. Davis, 371 U.S. 178, 182 (1962).  Reasons to deny leave to amend a pleading include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment," id.

In this case, as an initial matter, because Plaintiff has not provided the Court with the substance of any proposed amendment (see Docket Entry 28), the Court cannot make any determination as to whether justice requires leave to amend.  Furthermore, to allow Plaintiff's claims to survive based on a vague assertion that Plaintiff may learn facts through discovery that would support his claims would ignore federal pleading standards.  See Twombly, 550 U.S. at 561 (rejecting "no set of facts language" from Conley v. Gibson, 355 U.S. 41 (1957), because it would allow "a wholly conclusory statement of claim [to] survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery").  Finally, Plaintiff has amended his pleading on two prior occasions but has failed to properly state a claim regarding the matters as to which he seeks further leave.  (See Docket Entries 2, 12, 26.)  In sum, the Court lacks any grounds to grant Plaintiff's instant request regarding amendment at this stage.

### MOTION TO COMPEL

Plaintiff moves the Court for an order compelling Sheriff Barnes and Prison Health Services "to produce any and all video

footage and photography of the incident complained of in []
[P]laintiff's Complaint including any and all the video footage
photography taken on August 15th 2009 at the location of the
incident complained of in the Complaint." (Docket Entry 30 at 1.)
Further, Plaintiff asserts that, although Sheriff Barnes has
acknowledged "that the requested video exists," he "has indicated
that [he] will not release any footage without a specific court
order to do so." (Id.) In Response, Sheriff Barnes correctly
notes that the Clerk of Court "has not yet noticed the scheduling
of an Initial Pretrial Conference nor has a Rule 26(f) Plan been
submitted by the Parties nor approved by the Court. The Court has
not yet issued an Initial Pretrial Order promulgating a discovery
plan or discovery schedule." (See Docket Entry 32 at 3.) For the
reasons stated in Sheriff Barnes's Response, the Court will deny
the instant Motion to Compel as unripe. See Fed. R. Civ. P. 26(d).

CONCLUSION

Because Guilford County is an improper party to this action,
the Court should dismiss all claims against it. With respect to
Plaintiff's Section 1983 claims against Sheriff Barnes, the Second
Amended Complaint contains insufficient factual matter to state a
claim against Sheriff Barnes in either his individual or official
capacities. However, Plaintiff has asserted a legally viable claim
for wrongful death against Sheriff Barnes under a theory of
respondeat superior. Finally, because the Court has not yet
entered a scheduling order, Plaintiff's Motion to Compel is unripe.

-15-

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Docket Entry 30) is **DENIED AS UNRIPE** but without prejudice to the refiling of said Motion once discovery has commenced.

**IT IS RECOMMENDED** that the Motion to Dismiss the Second Amended Complaint by County of Guilford and Sheriff B.J. Barnes (Docket Entry 19) be granted in part and denied in part in that the Court should dismiss Plaintiff's claims against Guilford County and Plaintiff's Section 1983 claims against Sheriff Barnes, but allow Plaintiff to pursue claims for wrongful death against Sheriff Barnes based on principles of respondeat superior. The Clerk should promptly set this case for an Initial Pretrial Conference.

                                        /s/ L. Patrick Auld
                                           **L. Patrick Auld**
                            **United States Magistrate Judge**

July 31, 2012